UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN D. BLACK, | ) | Case No. 3:09 CV 1997 |
| | ) | |
| Plaintiff, | ) | Judge Jack Zouhary |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James R. Knepp II |
| | ) | |

John D. Black appeals the administrative denial of disability insurance benefits and supplemental security income benefits under 42 U.S.C. §405(g) and §1383(c)(3), respectively. Black contends that he has been disabled since January 1, 2005, due to congestive heart failure, other cardiac impairments, obesity, degenerative disc disease, frozen shoulders, panic disorder and anxiety. Black worked at Lear Corporation, where in 2003 he tripped on a skid on a walkway. (Tr. 406). Later he complained of severe back pain, and that the pain became worse following chiropractic treatment (which he discontinued) (*Id.*). He stayed on Workers' Compensation for nearly a year before retiring, and he continued to receive insurance payments through Lear Corporation through the first quarter of 2006. (Tr. 17-18, 406). In February 2006, Black was hospitalized for five days for shortness of breath. He was diagnosed with congestive heart failure and myocardial infarction. (Tr. 274-341, 463-64). On May 24, 2006, Black applied for disability benefits. (Tr. 46, 149, 152).

Following an administrative hearing and review of the medical record, an ALJ determined on October 30, 2008, that Black was not disabled. (Tr. 46). The ALJ considered that Black was initially a younger individual at the time of alleged onset who had aged to the next

2

category of closely approaching advanced age at the time of the decision, was high school educated, and had performed unskilled work in the past. (Tr. 38-46). The ALJ conceded that Black could not perform the physical demands of his past work, but concluded that he could perform a limited range of light work, which included restriction to simple, routine work due to depression. The ALJ concluded that these restrictions allowed for the performance of other jobs as folder, mail clerk, and food preparer (Tr. 43, 45). This decision became the final decision of the Commissioner following the Appeals Council's denial of review. *See* 20 C.F.R. §404.981; §416.1481. This matter has been referred to the undersigned for report and recommend disposition pursuant to Local Rule 72.2.

## I. Black's Contentions

Black presents four challenges to the ALJ's findings:

1. The ALJ made a harmful mistake of fact when she based her decision on the purported fact that "no medical opinion" was more more (*sic*) than her *mental* residual functional capacity assessment; several of agency examining psychologist Dr. Wuebker's opinions were;

2. The ALJ erroneously evaluated examining agency physician Dr. Sethi's opinions about Black's *physical* limitations;

3. The ALJ erroneously evaluated treating physician Dr. Klir's opinions; and

4. Substantial evidence does not support the ALJ's credibility finding.

## II. Standard of Review

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

3

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson*, 402 U.S. at 401). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 506 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Accordingly, the Court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

## III.  Sequential Evaluation Process

The Commissioner follows a five-step review process known as the sequential evaluation. This evaluation begins with the question of whether the claimant is engaged in substantial gainful activity and then at the second step whether the claimant has a medically severe impairment. *See* 20 C.F.R. §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the question is whether the claimant has an impairment that meets or equals a listed impairment from the Listing of Impairments of Appendix 1. *See* 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If the claimant has an impairment that meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (noting that once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without

4

determination whether he can perform his prior work or other work.").

"At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform [his] previous type of work." *Dykes* ex rel. *Brymer v. Barnhart*, 112 F. App'x 463 (6th Cir. 2004) (unpublished); *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. E.g., *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

**IV. No Error in the ALJ's Consideration of Dr. Wuebker's Report**

The ALJ found that Black was able to perform simple, routine work that does not involve a fast pace, and that there was no medical opinion to support a more restrictive assessment of Black's mental residual functional capacity. (Tr. 40, 43). Black contends that Dr. Wuebker's psychological findings were more restrictive than those attributed to Black by the ALJ. (Tr. 43). The Commissioner counters that Dr. Wuebker's conclusions were harmonized by the ALJ with those of Drs. Haskins and Johnston and that the Social Security regulations and rulings expressly recognize that state agency psychologists are highly qualified experts in Social Security disability. What the Commissioner overlooks is that the three psychologists—Drs. Wuebker, Haskins and Johnston—all worked for the state agency. A thorough background in Social Security procedure is necessary to explain why the ALJ did not err.

Dr. Wuebker, a clinical psychologist, consultatively interviewed Black in August 2006, on behalf of the state agency. (Tr. 401- 405). His impression was major depressive disorder,

5

recurrent, moderate without psychotic features, panic disorder and agoraphobia. (Tr. 404).  He assigned a GAF (global assessment of functioning score) of 55, indicating "moderate" symptoms.[1] Dr. Wuebker concluded that Black's mental ability to relate to others including co-workers and supervisors was unimpaired, he had no history of work-related problems, his ability to understand, remember, and follow simple instruction was unimpaired, but that he had "moderate" impairment in maintaining concentration, persistence and pace to perform simple repetitive tasks due to mood and anxiety issues, and "moderate" impairment in withstanding work-related pressures and stress in structured work situations. (Tr. 405).

This examining psychologist's report was reviewed by Drs. Haskins and Johnston, also for the state agency. (Tr. 451). These psychologists prepared a Psychiatric Review Technique Form [PRTF] and Mental Residual Functional Capacity Assessment [MRFCA]. They included among their findings under "Section I" of the MRFCA a "moderate" restriction in the work-related categories of understanding and remembering detailed instruction, ability to carry out

---

[1]  A GAF score of 51 to 60 is described as indicating: "**Moderate symptoms** (*e.g.* flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (*e.g.*, few friends, conflicts with peer or co-workers.). American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, p. 34 (4th Ed. text revision 2000).

The GAF score "represents 'the clinician's judgment of the individual's overall level of functioning,'" not necessarily the severity of impairment. *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411 (6th Cir. Dec. 15, 2006) (unpublished) ; *Wesley v. Comm'r of Soc. Sec*.,  2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000) (unpublished) (quoting Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994)). For example, a GAF score in the 41to 50 range may reflect either the clinician's opinion that the claimant has "serious symptoms" **or** "serious impairment" of social or occupational functioning. *Kornecky v. Comm'r of Social Security,* 167 F. App'x 496, 511, 110 Soc. Sec. Rep. Serv. 315 (6th Cir. Feb. 9, 2006). The score itself "does not establish an impairment seriously interfering with the plaintiff's ability to perform basic work activities." *Id*. (quoting *Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004)). Further the ALJ's failure to refer to a GAF score in formulating residual functional capacity does not make this formulation unreliable. *Kornecky*, 167 F. App'x at 511; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 469 (6th Cir. 2003).  The Commissioner has determined that there is no direct correlation between GAF scores measurements and the mental disorder severity listings.  65 Fed. Reg. 50746-01, 5076-4, 5076-5, 2000 WL 1173632 (F. R.); *DeBoard*, 211 F. App'x at 415. Consequently, the GAF score does not reflect a judgment on the severity of the mental impairment *vis-à-vis* the listed impairments.

6

detailed instruction, ability to maintain attention and concentration for extended periods, and ability to complete a normal work day and work week without interruption. (Tr. 449-50). Drs. Haskins and Johnston's residual functional capacity assessment appeared in the narrative portion under "Section III" of the MRFCA. They concluded that Black was limited to performing simple, repetitive work. (Tr. 451-52).

The underlying error in Black's argument is that it presumes that Dr. Wuebker's report presents a residual functional capacity assessment for use in determining Black's vocational capability. Black conflates the three-step process that leads to the formulation of the MRFCA. Dr. Wuebker performed a mental status examination.[2] This report is the first step and is necessary to determine whether the applicant suffers from "severe" mental impairment at steps two and three of the sequential evaluation process, in accordance with the PRTF. *See* 20 C.F.R. §404.1520a(c); §416.920a(c); Social Security Ruling (SSR) 96-8p.[3] This is preliminary step to assessing mental residual functional capacity. *See* 20 C.F. R. §404.1520a(d)(3); §416.920a(d)(3). When the applicant demonstrates a severe mental impairment, which does not appear initially to be disabling, then the matter of the applicant's residual functional capacity arises. *Id.* As further explained in SSR 96-8p:

---

[2] "A mental status examination (MSE) is a medical process where a clinician working in the field of mental health (usually a psychotherapist, social worker, psychiatrist, psychiatric nurse or psychologist) systematically examines a patient's mind. Each area of function is considered separately under categories in a way similar to a physical examination performed by physicians." *Pate-Fires v. Astrue,* 564 F.3d 935, 946 (8th Cir. 2009).

[3] *The psychiatric review technique.* The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. SSR 96-8p,1996 WL 374184, at *4.

7

> The mental RFC [residual functional capacity] assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

1996 WL 374184, at *4; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00B & C.

This more detailed assessment is itself a two-step process. The Commissioner requires a special form to be used due to the complexity of assessing MRFCA: Form SSA-4734-F4-SUP. *See* Program Operation Manual System (POMS) DI 24510.060A; DI 24510.090.[4] First, the evaluator must complete "Section I" of the Social Security Administration's MRFCA form, then under "Section III," the medical evaluator fills in his or her medical conclusion regarding the applicant's mental residual functional capacity.

"Section I" lists four broad categories: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. The MRFCA form requires the evaluator to indicate ratings on these categories using 20 subfactors. (Tr. 449-50). *See* POMS DI 24510.060; DI 24510.090. The evaluator is required to rate the foregoing assessment factors as "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category" and "not ratable on available evidence." *See* POMS DI 24510.060B.[5] The MRFCA is prepared in accordance with 20 C.F.R. §404.1545(c) and §416.945(c), which require this more detailed evaluation of the "nature and extent" of mental limitations *prior to* determining residual functional capacity for work activity.

---

[4] The POMS is the operational reference used by SSA staff to conduct SSA's daily business. "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . ." *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003). The POMS is available at http://www.ssa.gov.

[5] "Section II" of the MRFCA is merely "Remarks."

8

The actual MRFCA appears under "Section III" of the MRFCA form. (*See* Tr. 451). Both Drs. Haskins and Johnston indicated "moderate" limitation in three of the subfactors under "Section I." That, however, is not the residual functional capacity assessment for work activity. POMS Section DI 24510.063B states that under "Section I" marking the box labeled "moderately limited" indicates that the "evidence supports the conclusion that the individual's capacity to perform the activity is impaired." "Section I," though, is "merely a worksheet." *See* POMS DI 24510.060B2.

The degree and extent of the capacity or limitation must be described in narrative form under "Section III." *See* POMS DI 24510.060B; DI 24510.063B. "It is under Section III where "the actual mental RFC assessment is recorded." *See* POMS DI 24510.060B2. Thus, as a matter of law, the ALJ is not required to include the findings of "moderate" restriction from "Section I" in formulating residual functional capacity. *See Liggett v. Astrue*, 2009 WL 189934, *7-8 (E.D. Pa.); *Berry v. Astrue*, 2009 WL 50072, *15 (W.D.Va.); *Norris v. Astrue*, 2008 WL 4911794, *16 (E.D.N.C.); *Malueg v. Astrue*, 2007 WL 5480523, *6-7 (W.D. Wis).

Returning to Black's first contention, the ALJ did not err because the ALJ used the actual mental residual functional capacity findings that appear under "Section III" of the MRFCA. Dr. Wuebker's findings in his MSE report were, in effect, raw preliminary medical data of "moderate" limitation that required additional medical consideration on the "nature and extent" of impairment through the highly regimented procedure used to determine MRFCA. The ALJ correctly used the actual residual functional capacity findings from the state agency medical consultants.

With this background, the Commissioner's argument makes sense because "state agency

9

medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," whose findings must be considered "as opinion evidence" by the ALJ. 20 C.F.R. §404.1527(f)(2)(I); §416.927(f)(2)(I).

## V. No Error in the ALJ's Consideration of Dr. Sethi's Report

Dr. Sethi, a state agency consultative physician, examined Black in August 2006. (Tr. 406-412). Dr. Sethi reported multiple abnormal findings and concluded that "[b]ased on my objective findings, the claimant's ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects and traveling is moderately limited." (Tr. 408).[6] The ALJ concluded that physically Black "has the residual functional capacity for light work as defined in 20 C.F.R. §404.1567(b) and §416.967(b) except that he is not able to work above shoulder level or below hip level." (Tr. 40).[7] The ALJ specifically acknowledged Dr. Sethi's report and conclusion of "moderate" impairment in those areas. (Tr. 41).

The ALJ appears to have taken the lowest common element approach. After Dr. Sethi

---

[6] Dr. Sethi's findings included slightly diminished ranges of cervical, shoulder, and spinal ranges of motion. (Tr. 410-12). He also noted a herniated disc reported in a 2003 Worker's Compensation injury. (Tr. 408). He noted history of heart attack but reported no evidence of congestive heart failure. (Tr. 408). Manual muscle testing and neurological findings were normal. (Tr. 408, 409).

[7] These regulations define light work as:

*Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567 (b); 416.967(b).

examined Black, state agency physicians reviewed Dr. Sethi's findings. Those physicians opined on September 15, 2006, that the "MER" (medical evidence of record) was consistent with "medium" exertion, *i.e.*, lifting 50 pounds occasionally, 25 pounds frequently, working on one's feet six hours of the workday, and unlimited operation of hand or foot controls. (Tr. 454-462, 455). *See* 20 C.F.R. §404.1567(c); §416.967(c). As the regulation provides: "If someone can do medium work, we determine that he or she can also do sedentary or light work." *Id.* The ALJ incorporated this physical residual functional capacity assessment in the written decision. (Tr. 41).

Additionally, the ALJ relied on the opinion from Black's own doctor, Dr. Klir. (Tr. 41). The ALJ claimed in error that Dr. Klir stated in July 2006 that Black was not able to lift more than 50 pounds occasionally or ten pounds frequently. (Tr. 41, 387). The ALJ misread Dr. Klir's opinion. Dr. Klir actually reported that Black could not lift more than 25 pounds and that Black was unable to lift more than 10 pounds repetitively. (Tr. 387). Despite the ALJ's misreading, Dr. Klir's opinion was consistent with light work's 20 pound occasional, 10 pound frequent lift/carry limit. *See* 20 C.F.R. §404.1567(b); §416.967(b).

Those findings, however, cover only the lifting aspect of light work. Light work also entails being on one's feet six hours of an eight-hour work day. *See* SSR 83-10, 1983 WL 31251, at *6. Black contends that because the ability to perform the full range of light work normally implies the ability to perform "sedentary" work, then the ALJ also implicitly found that Black could sit for six hours total during a work day. Black argues that Dr. Sethi's findings of "moderate" restriction on sitting, standing, and walking negated this conclusion. However, the September 2006 state agency physician residual functional capacity assessment for medium

11

work supplied the supporting medical findings. (Tr. 41, 455). Further, the ALJ buttressed this conclusion with reference to the lack of evidence of muscle atrophy in any extremities, that Black does not need ambulatory assistance devices, that he has had no spinal or cardiac surgeries since the alleged onset of disability, and that Dr. Klir had suggested that Black was able return to work (Tr. 43, 389).[8] Accordingly, the ALJ had substantial evidence for the decision.

**VI. No Error in the ALJ's Consideration of Dr. Klir's Opinions**

Black refers to Dr. Klir's July 2006 report appearing on pages 386-89 of the transcript. (Statement of Errors p. 8). The portion concerning lift/carry capability was accepted by the ALJ and used to support the light work capability finding. (Tr. 41). Black argues that Dr. Klir wrote in the medical notes that Black should remain "further off work," citing page 388. However, the handwritten notes are illegible. Even so, Black's argument based on this comment in the May 2006 medical notes is connected to his argument based on Dr. Klir's July 2006 opinion regarding Black's exertional capabilities. (*See* Tr. 387, Fact Sheet p. 2).[9] As explained with reference to Dr. Sethi's opinion, the lifting restrictions noted by Dr. Klir were within the range of light work. Black contends, however, that the ALJ should have sought clarification from Dr. Klir about the May 2006 "further off work" opinion.

Any confusion rests squarely at the feet of Dr. Klir. His notes reported "slip to return to work," assigned exertional capabilities within the range of light work, and reported "further off work." Black debates whether the work slip reference meant. However, the ALJ's reading of this medical notation was reasonable.

---

[8] Dr. Klir's medical notes indicated on May 10, 2006, "Slip to return to work."

[9] Black argues that he reads Dr. Klir's note as "off work [illegible] further off work to be competed by cardiologist."

12

Next, the ALJ did not notice the illegible "off work" comment in the notes. The notation does not appear to be an opinion of disability. It appears more as a note that Black was off work and that the doctor desired a cardiac consult. Even if Dr. Sethi had clearly presented a medical opinion of disability, any error would have been harmless. The ALJ may discredit a treating physician's opinion when there has been conflicting unsupported changes in the opinion on claimant's residual functional capacity. *See Stanley v. Dep't of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Boggle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *see also* 20 C.F.R. §404.1527(d)(4); §416.927(d)(4).

Finally, Black challenges the ALJ's rejection of Dr. Klir's opinion that Black cannot bend, stoop, crouch or crawl. (Tr. 387). Dr. Klir referred only to lumbar disc disease, coronary artery disease, congestive heart failure, and depression. (Tr. 386). The ALJ rejected these restrictions as inconsistent with the majority of other medical opinions, inconsistent with the objective medical evidence, and inconsistent with the doctor's May 2006 statement about returning to work. (Tr. 42). The ALJ was apparently referring to the residual functional capacity determined by state agency physicians and Dr. Sethi's opinion, which did not include restrictions on stooping, etc. (Tr. 41). The ALJ also cited to the 2002, 2005, and 2006 MRI studies as supporting the conclusion that there were only mild degenerative changes, and mild L5 herniation with no impingement. (Tr. 42). Only the 2002 MRI was reviewed by the state agency physicians. (Tr. 455). However, the ALJ was correct that the subsequent MRI studies did not reveal significant deterioration, so it was reasonable to extrapolate the state agency physicians' opinion.

The ALJ must give an opinion from a treating source controlling weight if the opinion is

13

"well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2)). Consistency and supportability are key. Consistency is simply comparison "with the record as a whole." 20 C.F.R. §404.1527(d)(4); §416.927(d)(4). Supportability concerns the medical signs and laboratory findings and "[t]he better an explanation a source provides for an opinion, the more weight" it is to be given. 20 C.F.R. §404.1527(d)(3); §416.927(d)(3). Supportability of the medical opinion of disability has long been a key factor in determining how much weight to give an opinion. It is well-established that the ALJ is not bound by a conclusory opinion that is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Sec'y*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Sec'y*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). Dr. Klir provided no explanation. He simply listed some diagnoses and stated that Black could not bend, stoop, crouch or crawl. The ALJ thus had substantial evidence to reject this portion of Dr. Klir's opinion as inconsistent and lacking support.

**VII. ALJ Lacked Substantial Evidence to Reject Black's Credibility**

Black contends that the ALJ did not reasonably evaluate Black's credibility. Black argues that the ALJ failed to review daily activities and rejected his credibility because Black was fat. (Tr. 43). The Commissioner does not respond to this argument.[10]

The ALJ found that Black's allegations concerning his inability to sit, stand or walk for

---

[10] The Commissioner had the authority under 42 U.S.C. §405(g) as incorporated under §1383(c)(3) to move to remand for further action by the Commissioner before proceeding into litigation of the erroneous final administrative decision. The Commissioner did not avail himself of this motion procedure for pre-adjudication return of the case.

14

prolonged periods and his inability to lift even ten pounds were "not entirely persuasive" and were inconsistent with the majority of the medical opinions and objective evidence. The ALJ further stated that Black's daily activities "seem to be limited beyond that which is suggested by the objective medical evidence, there is no evidence of muscle atrophy, he is obese but not morbidly so, his cardiac ejection fraction readings showed improvement, and Dr. Klir suggested that Black was able to return to work." (Tr. 43).

The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Credibility determinations track pain analysis. *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); *see also Saddler v. Comm'r of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (6th Cir. March 4, 1999) (unpublished table decision); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The administrative decision, " must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 *1-2; *Felisky*, 35 F.3d at 1036 (citing *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987)).

The administrative evaluation process begins with the traditional two-prong *Duncan* pain analysis before evaluating the additional regulatory considerations under 20 C.F.R.

15

§404.1529(c)(3) and §416.929(c)(3).[11] *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under this two-prong analysis, the first question is whether there exists an underlying medically determinable physical or mental impairment. There must be an impairment with demonstrable abnormalities, which are medically determinable through medical evidence consisting of symptoms, signs, or laboratory findings. *See* SSR 82-58, 1982 WL 31378, at *1. The ALJ found impairments and demonstrable abnormalities in limiting Black to light exertion, and finding that he could not return to his prior work. The ALJ found that Black suffered heart disease, "spinal pain," obesity, and depression. (Tr. 40).

The second question is whether the impairments would be *reasonably* expected to

---

[11] This list of these other critical consideration consists of:

(I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §404.1529(c)(3); §416.929(c)(3)

16

produce the individual's pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *2. The ALJ was required to use the multi-factored analysis set out by ruling and regulation "[b]ecause symptoms, such as pain, are subjective and difficult to quantify." 20 C.F.R. §404.1529(c)(3) & §416.929(c)(3). The ALJ's reasoning on this point is, however, circuitous. The ALJ begins with Black's complaints, presumably from the administrative hearing, and concludes that they are inconsistent with the objective medical evidence. (Tr. 43). There was no attempt to quantify the subjective allegations of pain. The deficiencies is this analysis are obvious. First, there was no identification of specific daily activities. Next, there was no consideration of which body areas were allegedly affected and frequency of pain, nor any consideration of the modalities and medications used to alleviate pain. It appears the ALJ did not consider Black's subjective complaints. The ALJ rejects them for being inconsistent without any analysis in line with SSR 96-7p or 20 C.F.R. §404.1529(c) and 416.929(c). The ALJ missed the point of the multi-factored analysis, which is to avoid rejecting alleged pain on the basis that pain was not supported by objective evidence. The fact that an individual does not use a cane or walker or is not morbidly obese, does not necessarily lead to the conclusion that his pain is not so severe so as to prevent him from the performance of light work.

"An agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." *Wilson,* 378 F.3d at 545 (quoting *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) (quoting *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959)). The ALJ's determination did not attempt to quantify

17

Black's subjective allegations of pain as required. Consequently, because the administrative process was contrary to Social Security directives, the ALJ's rejection of Black credibility was not supported by substantial evidence.

## VIII. Remand for Rehearing

The only question remaining is whether to grant Black's demand to enter judgment reversing the administrative decision without remand for rehearing for a judgment awarding benefits. Congress has authorized reversal under the fourth sentence of 42 U.S.C. §405(g) "with or without remanding the cause for a rehearing." *See Faucher v. Sec'y of HHS*, 17 F.3d 171, 174-75 (6th Cir. 1994) (citing *Sullivan v. Hudson*, 490 U.S. 877, 880 (1989)). The standard is that "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking," and where no factual issues remain unresolved in the case. *Felisky*, 35 F.3d at 1041 (quoting *Faucher*, 17 F.3d at 176). In all other instances, remand under the fourth sentence for rehearing is required. *See Faucher*, 17 F.3d at 175-76. Evidence of disability in this matter is not overwhelming or irrefuted and factual issues remain unresolved. Remand for rehearing is thus required.

## IX. Conclusion and Recommendation

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan*, 801 F.2d at 851 (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings"); *Foster*, 279 F.3d at 353. For the foregoing reasons based on the arguments presented, the record in this matter and applicable law,

18

the undersigned finds that the Commissioner's decision denying disability insurance and SSI benefits was based on an incorrect application of law and consequently lacking in support by substantial evidence. It is therefore recommended that the administrative decision be reversed and remanded under the fourth sentence of 42 U.S.C. §405(g) for rehearing.

                                                                        s/James R. Knepp II
                                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).