IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John D. Black, | Case No. 3:09 CV 1997 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff John Black timely filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental social security income ("SSI") benefits. This Court has jurisdiction under 42 U.S.C. § 405(g).

This case was referred to Magistrate Knepp for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(2). Following Defendant's Brief on the Merits (Doc. No. 13) and Plaintiff's Reply (Doc. No. 14), the Magistrate recommended that the Court affirm the final decision of the Commissioner with respect to three issues and reverse and remand the Commissioner's decision to deny Plaintiff's claim for DIB and SSI benefits under the fourth sentence of 42 U.S.C. § 405(g) (Doc. No. 15).

This matter is now before this Court on separate Objections to the R&R filed by Defendant (Doc. No. 16) and Plaintiff (Doc. No. 17). Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the

Magistrate's findings. For the reasons below, the Court adopts the recommendation to affirm on three issues but declines to adopt the Magistrate's recommendation to reverse and remand.

## BACKGROUND

The R&R accurately recites the relevant factual and procedural background from the record, and this Court adopts them in their entirety (Doc. No. 15, at 1-2). Briefly, Plaintiff is now fifty-five years old with two years of college education. Plaintiff worked at Lear Corporation, where in 2003 he tripped on a walkway, after which he claimed to have back pains (Doc. No. 10, at 433). He then obtained Workers' Compensation for nearly a year before retiring, and received insurance payments through Lear Corporation through the first quarter of 2006 (Doc. No. 10, at 433). In February 2006, Black was diagnosed with congestive heart failure and myocardial infarction (Doc. No. 10, at 296).

Plaintiff applied for DIB and SSI benefits on May 24, 2006, alleging he has been disabled since January 1, 2005, due to congestive heart failure, other cardiac impairments, obesity, degenerative disc disease, frozen shoulders, panic disorder, and anxiety (Doc. No. 10, at 46). On October 30, 2008, after an administrative hearing and review of the medical record, Administrative Law Judge ("ALJ") Stam determined that Black was not disabled (Doc. No. 10, at 54). Following the Appeals Council's denial of review, the ALJ's decision became the final decision of the Commissioner and Plaintiff filed the present action. *See* 20 C.F.R. § 404.981. The Magistrate recommended the Court affirm the ALJ's decision with respect to three issues, and reverse and remand the ALJ's adverse credibility finding on the grounds that substantial evidence does not support the ALJ's determination (Doc. No. 15, at 18).

**STANDARD OF REVIEW**

In reviewing the denial of SSI and DIB, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)).  Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

**DISABILITY DETERMINATION**

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" under Social Security is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

3

not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (definition used in DIB context); *see also* 20 C.F.R. § 416.905(a) (definition used in SSI context). In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Walters*, 127 F.3d at 529 (citing 42 U.S.C. § 423(d)(2)).

The Commissioner's regulations governing the five-step evaluation of disability for DIB and SSI benefits are identical for the purposes of this Court's review, and are found at 20 C.F.R. §§ 404.1520 and 416.920, respectively:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. Determine the claimant's residual functional capacity and whether claimant can perform past relevant work.

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Only if a claimant satisfies each element of the analysis, including the inability to do other work, and meets the duration requirement, is he determined to be disabled. 20 C.F.R. § 416.920(4)(i)-(v); *see also Walters*, 127 F.3d at 529.

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five, in

determining whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ denied Plaintiff's request for benefits under step five, finding that, while Plaintiff could not resume his past relevant work ("medium factory work, unskilled"), Plaintiff has sufficient residual functional capacity to perform light work with some limiting conditions (Doc. No. 10, at 17, 40).

Plaintiff appealed the ALJ's decision, presenting four challenges to the ALJ's findings. First, Plaintiff argued the ALJ made a harmful mistake of fact by stating that none of the medical opinions offered were more restrictive than the ALJ's determination for Plaintiff's mental residual functional capacity assessment, pointing to psychologist Dr. Wuebker's opinion. Second, Plaintiff argued the ALJ erroneously evaluated examining agency physician Dr. Sethi's opinions about Plaintiff's physical limitations. Third, Plaintiff claimed the ALJ erroneously evaluated treating physician Dr. Klir's opinions. Fourth, Plaintiff alleged the ALJ's credibility finding with respect to Plaintiff's claimed limitations was not supported by substantial evidence (Doc. Nos. 10, 15).

Plaintiff's appeal was denied and the ALJ's findings affirmed. Subsequently, Plaintiff filed this action. The Magistrate's R&R recommended that this Court affirm the ALJ's decision with respect to the first three arguments and reverse and remand with respect to the fourth issue (Doc. No. 15). In response, Plaintiff raises three objections to the R&R that closely track the original challenges to the ALJ's findings: (1) substantial evidence does not support the ALJ's mental residual functional capacity finding because of an erroneous evaluation of Dr. Wuebker's opinion; (2) the R&R improperly affirms the ALJ's evaluation of Dr. Sethi's opinions; and (3) the R&R improperly recommended affirmance of Dr. Klir's opinions instead of remanding for clarification (Doc. No. 17).

Defendant filed an objection to the R&R's recommendation to reverse and remand on the fourth issue of the ALJ's credibility determination, arguing the ALJ adequately considered Plaintiff's arguments and provided a reasonable explanation for rejecting Plaintiff's credibility (Doc. No. 16). Plaintiff's and Defendant's objections to each of the four points of the R&R are addressed below.

## DISCUSSION

### Dr. Wuebker Opinion

Plaintiff argues the R&R improperly overlooks the allegedly more restrictive evaluation of Plaintiff's mental residual functional capacity present in Dr. Wuebker's opinion by recommending the ALJ's decision be affirmed. Specifically, Plaintiff argues that Dr. Wuebker allegedly opined that Black was more limited mentally than the ALJ ultimately determined, due to the ALJ's reliance on the Mental Residual Functional Capacity Assessment ("MRFCA") completed by two state agency psychologists (Doc. No. 17, at 1-5). Plaintiff argues the R&R is incorrect in asserting that an examining psychologist may not provide opinions relevant to the determination of Plaintiff's mental residual capacity (Doc. No. 17, at 2).

This Court has reviewed the R&R's discussion on the use of Dr. Wuebker's opinion with respect to the prescribed process for determining a claimant's mental residual functional capacity and completion of the MRFCA form and finds the discussion to be an accurate and thorough explanation of the process required under the applicable rules (Doc. No. 15, at 5-8). *See* 20 C.F.R. § 404.1520a(c), (d); § 404.1545(c); § 416.920a(c), (d); § 416.945(c). Based on the process used by Drs. Haskins and Johnston to incorporate Dr. Wuebker's opinion in their determination of Plaintiff's mental residual functional capacity, there is substantial evidence to support the ALJ's determination.

6

As the R&R correctly points out, Dr. Wuebker's opinion of a "moderate" impairment was included in Section I of the MRFCA form generated by Drs. Haskins and Johnston and considered by the ALJ -- a section that is "merely a worksheet" to be used in completing Section III of the MRFCA form. Program Operation Manual System ("POMS") DI 24510.060B. The doctors used the information in Section I in making their final determination in Section III that Plaintiff "can perform simple, routine work" (Doc. No. 10, at 451). Section III also explicitly indicated that weight was given to Dr. Wuebker's examination. *Id.* Subsequently, the ALJ relied upon the MRFCA report in combination with Dr. Weubker's opinion, stating that Plaintiff is able to perform simple routine work that does not involve a fast pace (Doc. No. 10, at 43).

Plaintiff's objection, that the ALJ improperly determined Plaintiff's mental residual functional capacity in conflict with Dr. Wuebker's opinion, is without merit. Specifically, Plaintiff contends Dr. Wuebker's opinion of "moderate" limitations directly contradicts the ALJ's residual capacity determination. In support of this objection, Plaintiff provides several citations, each of which indicate the ALJ *may*, but not *must*, consider the opinion of the examining psychologist in making a final determination on the claimant's mental functional limitations. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514–15 (6th Cir. 2010) (examining agency physicians may provide opinions relevant to the determination of a claimant's mental residual functional capacity); 20 C.F.R. § 404.1519n(c)(6) (2010) (explaining that a consultative examiner may offer a relevant opinion regarding residual functional capacity).

However, the weight of the authorities cited by Plaintiff only indicate that the ALJ could, or may, consider the opinion of Dr. Wuebker as the examining psychologist -- the ALJ was not required to follow the opinion. Instead, the ALJ was required to consider the findings of Drs. Haskins and

7

Johnston in the MRFCA, which she did. POMS DI 24510.060B2, 2001 WL 1933367 (stating the actual mental residual functional capacity assessment is recorded in Section III). Despite Plaintiff's contention and the ALJ's discretionary power to consider Dr. Wuebker's opinion, the ALJ nonetheless considered and attempted to harmonize the residual functional capacity in the MRFCA with Dr. Wuebker's opinion, stating that Plaintiff's residual capacity of being able to perform simple, routine work that does not involve a fast pace is "consistent with the State Agency's medical opinion of record [MRFCA], [and] with Dr. Wuebker's opinion." (Doc. No. 10, at 43) (spelling corrected).

Furthermore, Plaintiff argues Dr. Wuebker's opinion of "moderate" limitations is not consistent with the ALJ's mental residual functional capacity finding of "simple, routine work that does not involve a fast pace." Plaintiff points out Dr. Wuebker opined that Plaintiff's "ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks in a work milieu is moderately impaired. . . ." (Doc. No. 10, at 405). Dr. Wuebker also stated, "[Plaintiff's] ability to withstand the stress and pressures associated with day-to-day work activity is moderately impaired. . . ." *Id.* Comparing the ALJ's residual capacity finding with Dr. Wuebker's findings, it is not clear to this Court what limitations, other than "simple, routine" work at a slow pace, the ALJ could have found in order to account for a "moderate" impairment of Plaintiff's ability to work -- if simple work at a slow pace is *not* representative of "moderate" impairment, then it would seem that Plaintiff's argued view of moderate impairment would, in actuality, be equivalent to complete impairment. Therefore, after reviewing Dr. Wuebker's report (Doc. No. 10, at 401-05) and the MRFCA (Doc. No. 10, at 449-52) in conjunction with the ALJ's decision (Doc. No. 10, at 38-45), this Court is persuaded that substantial evidence supports the ALJ's decision.

**Dr. Sethi Opinion**

In his second objection, Plaintiff argues the R&R improperly recommended accepting the ALJ's determination that Plaintiff was able to perform light work consistent with an August 2006 examination by Dr. Sethi. In the examination report, Dr. Sethi stated "[Plaintiff's] ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects and traveling is moderately limited." (Doc. No. 10, at 408). The ALJ, in considering Dr. Sethi's opinion, determined Plaintiff had the residual functional capacity to do light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the added limitations of not being able to work above shoulder level or below hip level (Doc. No. 10, at 41). Plaintiff argues the ALJ's light work functional capacity determination is not in accordance with Dr. Sethi's opinion (Doc. No. 17, at 9-11).

"Light work" is defined in 20 C.F.R. § 404.1567(b):

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do *sedentary work*, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. (Emphasis added.)

"Sedentary work," as used in the light work definition, is further defined in 20 C.F.R. § 404.1567(a):

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

9

This Court has reviewed Dr. Sethi's report (Doc. No. 10, at 406-12) and is persuaded that substantial evidence supports the ALJ's determination. As noted by the ALJ, Dr. Sethi's findings are generally unremarkable, finding only moderate tenderness over the shoulders and moderate tenderness in the back of the neck. The report also notes that all joints show normal range of motion without effusion, redness or deformity and no muscular atrophy. The range of motion examination results are similarly unremarkable, indicating normal results for Plaintiff's hips, knees, ankles, hands, elbows, and wrists. The results for Plaintiff's spine and shoulders were very near or slightly below normal, the majority of which are five or ten degrees less than the indicated normal values, with the maximum variance being a 25 degree reduction in range of motion for Plaintiff's dorsolumbar spine flexion (Doc. No. 10, at 410-12). Other than Dr. Sethi's general statement of "moderate" limitation, the report does not mention any specific limits on Plaintiff's ability to walk, lift, or sit for extended periods of time that would conflict with the ALJ's determination that Plaintiff could perform light work as defined above.

Furthermore, the ALJ considered, and this Court has reviewed, the medical reports of non-examining Drs. McCloud and Sagone. Their reports indicate Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, sit for about six hours in an eight-hour workday and stand or walk for about six hours in an eight-hour work day -- no postural or manipulative limitations for Plaintiff. The evidence cited for the doctors' conclusions include a review of MRI scans of Plaintiff's spine and reviews of Plaintiff's physical exams that show limited range of motion in the lower spine but otherwise normal muscular strength (Doc No. 10, at 454–62).

The ALJ, expressing doubts about whether the doctors' conclusions that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently were adequately supported by objective

medical evidence, chose to view Plaintiff's limitations in a light more favorable to Plaintiff. Instead, the ALJ gave weight to Dr. Klir's opinion (discussed below) stating Plaintiff could not lift more than twenty-five pounds occasionally and no more than ten pounds repetitively -- a more limited set of capabilities than those stated by Drs. McCloud and Sagone (Doc. No. 10, at 387). The ALJ also supported her decision by citing additional MRI studies in 2002, 2005, and 2006, each of which supported a finding of Plaintiff's ability to do light work (Doc. No. 10, at 42, 228-34, 271-73, 465-67).

Despite these reports, Plaintiff objects to the R&R's recommendation to affirm the ALJ's determination, claiming the Magistrate "implicitly" recommended the ALJ had committed harmless error and arguing the ALJ failed to give any reasons for her "implicit disagreement" with Dr. Sethi's opinion of moderate limitation (Doc. No. 17, at 10). This Court is not persuaded. After reviewing the medical reports and the ALJ's decision, substantial evidence supports the ALJ's determination with respect to Dr. Sethi's opinion. Furthermore, while Plaintiff claims a "light work" residual functional capacity is beyond Plaintiff's capabilities, Plaintiff fails to point to any evidence in the record, other than Dr. Sethi's undefined "moderately limited" phrase, that would support an alternative determination.

### Dr. Klir Opinion

Plaintiff's third objection argues that this Court should not affirm the ALJ's evaluation of Dr. Klir's medical opinion. Plaintiff argues the report is, at a minimum, ambiguous, and should be remanded for further clarification (Doc. No. 17, at 11).

The medical chart detailing Plaintiff's treatment by Dr. Klir, Plaintiff's primary treating doctor, provides details on the progression of Plaintiff's medical issues from late-2002 through mid-

11

2006. In making her determination, the ALJ noted two separate entries on May 6, 2006 indicating Plaintiff was further off work and a "slip to return to work" (Doc No. 10, at 389).

Plaintiff challenges the ALJ's reliance on Dr. Klir's report, primarily on the basis of the difficulty in deciphering the doctor's handwritten notes regarding returning to work. While Dr. Klir's handwriting is difficult to understand at various points in the multi-page document, including some of the return-to-work notes on May 6, 2006, the ambiguity of some entries should not prevent the ALJ from relying on Dr. Klir's records for other evidence of Plaintiff's disability. Notably, while the ALJ did cite the inclusion of the "slip to return to work" note, the ALJ also relied upon other legible sections of Dr. Klir's report, such as the weight lifting limitations when considering Dr. Sethi's opinion (Doc. No. 10, at 387). Additionally, another note, not cited by the ALJ but clearly legible, is a separate entry on September 23, 2005 that reads "slip to return to work - light duty" -- well after Plaintiff's claimed disability date of January 1, 2005 (Doc. No. 10, at 392). While there may be some ambiguity as to the specific notes on May 6, 2006 regarding Plaintiff's return to work, this Court, after reviewing Dr. Klir's report, is persuaded that the report as a whole is not ambiguous and does require a remand as argued by Plaintiff.

**Credibility Determination**

The fourth and final objection to the R&R, this one raised by the Commissioner, argues against the Magistrate's recommendation to reverse and remand the ALJ's decision finding Plaintiff's allegations regarding his physical impairments to not be entirely credible. The ALJ found Plaintiff's statements regarding the "the intensity, persistence and limiting effects of [his] symptoms . . . not persuasive" and Plaintiff's "allegations regarding his physical impairments (especially his alleged inability to sit, stand, or walk for prolonged periods and his inability to lift even ten pounds) are not

12

entirely persuasive since they are not consistent with the majority of the medical opinions of record nor are they consistent with the objective medical evidence." (Doc No. 10, at 41, 43).

The R&R recommended this Court reverse and remand the case to the ALJ because the ALJ's credibility determination was not supported by substantial evidence. Specifically, the R&R stated that the ALJ did not attempt to quantify Plaintiff's subjective allegations of pain in making the determination that Plaintiff could perform light work (Doc. No. 15, at 13-17).

As correctly stated in the R&R, it is the Commissioner's role to resolve conflicts in the evidence and to decide questions of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Under the substantial evidence standard, there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. *Id.* (quotation and citation omitted). "It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001). Furthermore, credibility determinations of the ALJ should not be "lightly discarded." *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (per curiam). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Id.* While it is up to the Commissioner to make credibility findings, an ALJ making an adverse credibility determination must clearly state his reasons for doing so. *Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

The Sixth Circuit has established a two-part test for evaluating a claimant's assertions of disabling pain:

13

>First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The first prong simply requires a showing of objective evidence of an underlying medical condition -- something clearly met in this case based on Plaintiff's history of back and heart problems. Under the two alternatives in the second prong, a court must balance a claimant's statements about the intensity and persistence of his pain or symptoms and the effect of those symptoms on the claimant's ability to work against the objective medical evidence that either directly confirms, or could reasonably support, the claimant's statements. These two *Duncan* prongs match up with the goal of the Social Security regulations to give credit to potentially difficult-to-quantify allegations of pain while making objective benefit determinations. *See* 20 C.F.R. § 404.1529(c)(2), (4), (d) ("Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

When performing the balancing of a claimant's statements regarding his pain and symptoms with the objective medical evidence, the regulations provide a list of factors a court should consider:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

  (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

  (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for fifteen to twenty minutes every hour, sleeping on a board, etc.); and

  (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

The Magistrate, after reviewing the ALJ's decision, recommended a reversal and remand, stating that the ALJ made "no attempt to quantify the subjective allegations of pain" and "missed the point of the multi-factored analysis" (Doc No. 15, at 16). This Court does not agree for two reasons.

First, the organization and content of the ALJ's decision both acknowledges the need to consider the factors listed above and methodically addresses each of Plaintiff's various allegations of pain as it relates to his various physical impairments. In her decision, the ALJ explains the evaluation process she is required to follow. In this description, the ALJ explicitly includes the list of factors noted above (Doc. No. 10, at 39). In the following section, where the ALJ makes her determination that Plaintiff has the residual functional capacity to perform light work, the ALJ provides a brief summary of Plaintiff's alleged physical ailments and proceeds to step through each major component of Plaintiff's medical issues, beginning with Plaintiff's general physical abilities, alleged limitations, and doctors' reports, followed by analyses of Plaintiff's imaging studies, his hospitalization for altered mental state, musculoskeletal problems, and heart problems. *Id.* at 41-43.

While it is true that the ALJ's decision does not explicitly attempt to place a specific pain level on every aspect of the analysis, it is also true that the ALJ's decision includes consideration of Plaintiff's subjective pain with respect to his various impairments and reasons for the adverse credibility determination. For example, in discussing Plaintiff's allegations that he is limited by back

15

and shoulder pain, the ALJ's decision considers Plaintiff's allegations of pain in his back, shoulder, arm, and neck that resulted in visits to four different physicians. The ALJ also noted that Plaintiff had been expelled from a pain management program because he was obtaining narcotic pain medication from multiple sources. The ALJ then reviewed some of Plaintiff's examination results and treatments, some of which support Plaintiff's subjective claims of pain while others do not. The ALJ's review of Plaintiff's heart problems follows a similar pattern -- the ALJ reviewed Plaintiff's claims of pain, including claims of fatigue and shortness of breath in February 2006, but noted that in later follow up visits, Plaintiff claimed to be fatigued but denied having additional chest pains or shortness of breath. The ALJ also noted gaps in Plaintiff's treatment, including Plaintiff's occasional failure to take his prescribed medication. The ALJ supported her analysis with medical record citations that supported her findings. *Id.* at 42-43. Viewed as a whole, the ALJ's decision does not merely discount Plaintiff's credibility in light of objective medical evidence as stated in the R&R. Instead, the ALJ was adhering to the regulations' goal of balancing Plaintiff's subjective allegations of pain and physical limitations with the weight of the objective medical evidence in making her determination of Plaintiff's disability.

Second, the record, particularly the transcript of Plaintiff's hearing before the ALJ, provides substantial evidence that the ALJ considered the factors listed above and did not "miss the point" of the multi-factor analysis as suggested in the R&R. During the hearing, the ALJ heard testimony on what medications Plaintiff was currently taking and if the medications produce any side effects (Doc. No. 10, at 25-26). The ALJ specifically questioned Plaintiff about his normal daily activities, which included taking his medicine, doing some dishes and vacuuming, and watching videos for three hours. *Id.* at 10-11. The ALJ asked Plaintiff about his own perceived limitations on sitting (forty-five minutes before doing something different), standing (half-hour), lifting (bag of groceries, twenty or

twenty-five pounds), and walking (quarter-mile). *Id.* at 21-22. Under questioning by his attorney, Plaintiff further testified that he could not lift things over his head. *Id.* at 25. Finally, Plaintiff testified about aspects of his past and current medical treatment for his heart and back conditions, his attempt to work as a nurse's aid (which included too much bending and lifting), and the fatigue Plaintiff experiences as a result of his physical conditions. *Id.* at 20-26. This testimony directly tracks the subjective pain and symptom factors listed above.

Viewing the ALJ's decision in conjunction with the record testimony, the R&R's statement that there was no consideration of Plaintiff's daily activities, medications, or subjective allegations of pain are without merit (Doc. No. 15, at 16). This Court therefore affirms the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, this Court determines that the ALJ based her decision on substantial evidence. This Court adopts the Magistrate's R&R with respect to the opinions of Drs. Wuebker, Sethi, and Klir. This Court however does not adopt the Magistrate's R&R with respect to the ALJ's credibility determination. Accordingly, this action is dismissed.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

                                                    December 10, 2010